IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SHARRON MAYO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-4270-CV-C-NKL |
| | ) |
| JAMES COLE, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Pending before the Court are three motions for summary judgment filed separately by Defendants Angie Malone and City of Fayette (Doc. 7), Howard County and Howard County Sheriff's Department (Doc. 9), and James Cole and Glasgow Police Department (Doc. 17.) For the reasons stated below, these motions will be granted.

**I.  Background**

This case arises out of the investigation and arrest of Plaintiff Sharron Mayo's son. In August 2003, Defendants James Cole of the Glasgow Police Department and Angie Malone of the Fayette Police Department arranged for two confidential informants to go to Mayo's home. Malone and Cole followed the informants to the home to observe what happened.

The parties disagree about what happened once the informants arrived at the home. Malone claims that she watched one of the informants enter the home. (Malone

1

Affidavidt [attached to Doc. 8].) According to Malone, the informant remained in the residence for approximately one minute, at which time the informant left the home and went to a prearranged meeting place, where the informant presented a small baggie of crack cocaine to Chief Cole.

Mayo disagrees with Malone's version of the events. According to Mayo, the informants never entered the home. Instead, they walked around the block before leaving to meet with the officers. According to Mayo, one of the informants later stated that no transaction had taken place. Mayo also claims that Malone could not have observed an informant enter the home, because the home's doors are not visible from the carwash where Mayo was parked.

As a result of the alleged sale, Mayo's son was arrested, and was incarcerated for several months. While the case was pending trial, someone forcibly entered Mayo's home and seized certain documents. (Pl. Amended Complaint [Doc. 43], p. 3.) No valuable items were taken.

Immediately after the burglary of the home, one or more of the Defendants showed Steven Herriford a photograph of Mayo and someone else which had been taken in Mayo's home. Herriford, whose relationship to Mayo is unclear to the Court, later told Mayo about the photograph. Mayo claims that the Defendants' possession of the photograph is evidence that the Defendants broke into her home without a warrant. Mayo alleges that "the only means by which the Defendants could have obtained the photograph

2

is either by entering [Mayo's] home and stealing same or by installing, and conducting, surveillance in the interior of [Mayo's] home." (Doc. 37, p. 5.)

Immediately after the burglary, the charges against Mayo's son were dismissed. According to Mayo, the charges were dismissed because one of the informants admitted that no drug transaction took place.

In her Amended Complaint, Mayo asserts the following claims: Conspiracy pursuant to 42 U.S.C. § 1985; RICO, 18 U.S.C. § 1961; Section 1983 (based on violation of Fifth and Fourteenth Amendments, as well as failure to supervise); Trespass; Forcible Entry; Harassment; Defamation, Libel, and Slander; Emotional Distress; and Extreme and Outrageous Conduct.

**II.  Discussion**

**A.  Federal Claims Related to Entry into Mayo's Home**

Although Mayo's pleadings are somewhat unclear, it appears that her federal claims, with the exception of her RICO claim, are based on Mayo's assertion that the Defendants either entered her home without a warrant or conducted unlawful surveillance of her home. In their motions for summary judgment, the Defendants argue that Mayo has failed to make any showing that they entered her home or conducted surveillance of her home.

After conducting an initial review of the pending motions, the Court determined that the only evidence Mayo had uncovered in support of her claims was an unnotarized affidavit of Steven Herriford. In the affidavit, Herriford states as follows:

3

> 1. Affiant was shown, by law enforcement officials of the Glasgow City Police Department, Fayette City Police Department and/or Howard County Sheriffs [sic] Department, a photograph of Sharon Mayo and another individual.
> 2. That prior to being shown the aforementioned photograph, Affiant had never been to Sharon Mayos [sic] home.
> 3. That Affiant described the photograph to Sharon Mayo.
> 4. Sharon Mayo informed and/or showed Affiant that the photograph was of Sharon Mayos [sic] home.

(Attached as Exhibit 3 to Doc. 36).

This affidavit is insufficient to support Mayo's claims. The affidavit does not set forth any identifying characteristics of the photograph that was allegedly shown to Herriford. It does not identify, for example, whether the photograph was of the inside or outside of the home; whether it appeared that the photograph had been taken by a surveillance camera; or whether it appeared that Mayo and the other individual knew they were being photographed. The only conclusion that can be drawn from the affidavit is that law enforcement officials somehow obtained a photograph of Sharon Mayo and another individual either outside or inside of her home.

Because Mayo is a pro se plaintiff, the Court has given her ample opportunity to conduct discovery and to present the evidence in a manner that is reviewable by the Court. After conducting an initial review of the pending motions, the Court arranged a teleconference with the parties on June 14, 2005. During that teleconference, the Court informed Mayo that Herriford's affidavit was deficient because it was not notarized. The Court also sought to obtain more information about the nature of the photograph. The only information that Mayo could add to Herriford's affidavit was that the other

individual in the photograph was her cousin.  Nevertheless, the Court gave Mayo until June 28 to file any supplementary notarized affidavits in response to the Defendants' motions.

On June 27, Mayo filed a motion for extension of time, claiming that she was unable to reach Herriford to obtain the affidavit.  (Doc. 53.)  The Court granted the motion, giving her until July 20 to file the affidavits.  (Order, Doc. 54.)  The Court stated in its Order that no further extensions would be granted absent exceptional circumstances. *Id*.  On July 20, Mayo filed another affidavit of Stephen Herriford.  (Doc. 55)  Although the affidavit was notarized, it contained almost exactly the same language as the prior affidavit.  For reasons that are unclear to the Court, Mayo also requested an extension of 10-15 days to obtain another affidavit from Herriford.  (Doc. 56)  Although the Court did not rule on that motion, fifteen days have come and gone since that time and no supplementary affidavit has been filed.

After having been given ample opportunity to supplement the record, the only evidence Mayo has presented in support of her claims is Herriford's affidavit.  Because no reasonable finder of fact could conclude from that affidavit that the Defendants unlawfully entered Mayo's home or conducted unlawful surveillance of her home, summary judgment is warranted as to the aforementioned claims.

**B.    RICO**

In its prior Order, the Court noted that Mayo had not adduced any evidence in support of her claims to the extent they were based on the arrest of her son.  Although the

5

Court determined that summary judgment was being sought as to those claims, the Court gave Mayo fourteen additional days to file any additional evidence or argumentation. That time has come and gone, and Mayo has offered no further evidence. Because no reasonable finder of fact could conclude without evidence that the Defendants unlawfully engaged in any conspiracy, obstructed an investigation, tampered with witnesses, received or otherwise dealt with controlled substances, or committed any other felonious acts, summary judgment is warranted as to Mayo's RICO claims.

      **C.     Remaining State Claims**

Because the Defendants are entitled to summary judgment as to Mayo's federal claims, the Court declines to exercise jurisdiction over Mayo's state law claims. "A federal district court has the discretionary power to decline jurisdiction where it has 'dismissed all claims over which it has original jurisdiction.'" *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 43 (2004) (quoting 28 U.S.C. § 1367(c)(3)). As the Supreme Court has noted, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Court finds that in this case, the balance of those factors requires dismissal without prejudice of Mayo's state law claims. If she so chooses, Mayo may seek relief in state court for her state claims.

**III. Conclusion**

Accordingly it is hereby

ORDERED that the Defendants' Motions for Summary Judgment (Docs 7, 9, and 17) are GRANTED in part. Summary Judgment is granted as to Mayo's federal claims. It is further

ORDERED that Mayo's state claims are DISMISSED without prejudice. It is further

ORDERED that Plaintiff's Motion for Extension of Time (Doc. 56) is DENIED as moot. It is further

ORDERED that the Motion to Strike Herriford's Affidavit (Doc. 59) is DENIED as moot.

                                                s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Dated: September 6, 2005
Jefferson City, Missouri